# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### ALEXANDRIA DIVISION

**LAURA LAVERGNE, individually and on behalf of her MINOR CHILD, AND ANTHONY LAVERGNE**

**VERSUS**

**THE PRINCETON AND EXCESS LINES INSURANCE COMPANY, WILLIAM E. HILTON, SHERIFF OF RAPIDES PARISH, MICHAEL BELGARD, BILLY FULLER, WILLIAM HICKS, CODY KING, STEVEN CLOESSNER, CASSIE SAUCIER , AND XYZ INSURANCE COMPANY**

**CIVIL ACTION NO.**

**JUDGE**

**MAGISTRATE JUDGE**

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiffs, Laura Lavergne, individually and on behalf of her minor child, and Anthony Lavergne, persons of the full age of majority, respectfully show the following:

### JURISDICTION AND VENUE

1.      Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. §1983 (Civil rights). Plaintiffs invoke the supplemental jurisdiction of the Court to hear and decide Plaintiffs' Louisiana State Law claims pursuant to 28 U.S.C. § 1367 (a).

2.      Venue is proper under 28 U.S.C. § 1391 (b) as the Defendants are located and the events giving rise to Plaintiffs' claims occurred within the boundaries of this judicial district.

### PARTIES

Plaintiffs (collectively referred to as "Plaintiffs") herein are:

3.     LAURA LAVERGNE, individually and on behalf of her MINOR CHILD, a resident and domiciliary of Boyce, Louisiana, and a citizen of the United States of America.

4.     ANTHONY LAVERGNE, a resident and domiciliary of Boyce, Louisiana, and a citizen of the United States of America.

Made defendants (collectively referred to as "Defendants") herein are:

5.     THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY, an insurance company domiciled and admitted in the state of Delaware that issued a policy of insurance that provides coverage for the wrongful actions of the Defendants named herein that caused damages to the Plaintiffs. Plaintiffs bring direct action against this insurer pursuant to the Louisiana Direct Action Statute, Louisiana Revised Statute 22:1269.

6.     WILLIAM E. HILTON, Sheriff, the governing authority, decision maker for the Rapides Parish Sheriff's Office, who, pursuant to the custom and usage, deprived plaintiffs of their rights secured by the United States Constitution in violation of 42 U.S.C. § 1983. He is being sued in his individual capacity and in his official capacity as the Sheriff of Rapides Parish. Upon information and belief, he is a resident of Rapides Parish, Louisiana, and can be served at 700 Murray Street, Alexandria, Louisiana 71301;

7.     MICHAEL BELGARD (hereinafter referred to as Belgard), a sheriff's deputy, corporal, and/or detective with the RAPIDES PARISH SHERIFF'S OFFICE, who, at the time of the occurrence described herein, was employed as a law enforcement officer for the Rapides Parish Sheriff's Office and acting within the course and scope of his employment for purposes of State Law, and under color of State Law, for purposes of Federal Law. Michael is a citizen of the State of Louisiana and the United States of America. He is being sued in his individual capacity and in his official capacity as a Rapides Parish Sheriff's deputy and/or detective. He is being sued

pursuant to 42 U.S.C. § 1983 and on the pendant State Law Claims and upon information and belief, he is domiciled in Rapides Parish, Louisiana, and can be served at 700 Murray Street, Alexandria, Louisiana 71301.

8.    BILLY FULLER (hereinafter referred to as Fuller) a sheriff's deputy, corporal, and/or detective with the RAPIDES PARISH SHERIFF'S OFFICE, who, at the time of the occurrence described herein, was employed as a law enforcement officer for the Rapides Parish Sheriff's Office and acting within the course and scope of his employment for purposes of State Law, and under color of State Law, for purposes of Federal Law. Billy is a citizen of the State of Louisiana and the United States of America. He is being sued in his individual capacity and in his official capacity as a Rapides Parish Sheriff's deputy and/or detective. He is being sued pursuant to 42 U.S.C. § 1983 and on the pendant State Law Claims and upon information and belief, he is domiciled in Rapides Parish, Louisiana, and can be served at 700 Murray Street, Alexandria, Louisiana 71301.

9.    WILLIAM HICKS (hereinafter referred to as Hicks) a sheriff's deputy, corporal, and/or detective with the RAPIDES PARISH SHERIFF'S OFFICE, who, at the time of the occurrence described herein, was employed as a law enforcement officer for the Rapides Parish Sheriff's Office and acting within the course and scope of his employment for purposes of State Law, and under color of State Law, for purposes of Federal Law. William is a citizen of the State of Louisiana and the United States of America. He is being sued in his individual capacity and in his official capacity as a Rapides Parish Sheriff's deputy and/or detective. He is being sued pursuant to 42 U.S.C. § 1983 and on the pendant State Law Claims and upon information and belief, he is domiciled in Rapides Parish, Louisiana, and can be served at 700 Murray Street, Alexandria, Louisiana 71301.

10.     CODY KING (hereinafter referred to as King) a sheriff's deputy, corporal, and/or detective with the RAPIDES PARISH SHERIFF'S OFFICE, who, at the time of the occurrence described herein, was employed as a law enforcement officer for the Rapides Parish Sheriff's Office and acting within the course and scope of his employment for purposes of State Law, and under color of State Law, for purposes of Federal Law. Cody is a citizen of the State of Louisiana and the United States of America. He is being sued in his individual capacity and in his official capacity as a Rapides Parish Sheriff's deputy and/or detective. He is being sued pursuant to 42 U.S.C. § 1983 and on the pendant State Law Claims and upon information and belief, he is domiciled in Rapides Parish, Louisiana, and can be served at 700 Murray Street, Alexandria, Louisiana 71301.

11.     STEVEN CLOESSNER (hereinafter referred to as Cloessner) a sheriff's deputy, corporal, and/or detective with the RAPIDES PARISH SHERIFF'S OFFICE, who, at the time of the occurrence described herein, was employed as a law enforcement officer for the Rapides Parish Sheriff's Office and acting within the course and scope of his employment for purposes of State Law, and under color of State Law, for purposes of Federal Law. Steven is a citizen of the State of Louisiana and the United States of America. He is being sued in his individual capacity and in his official capacity as a Rapides Parish Sheriff's deputy and/or detective. He is being sued pursuant to 42 U.S.C. § 1983 and on the pendant State Law Claims and upon information and belief, he is domiciled in Rapides Parish, Louisiana, and can be served at 700 Murray Street, Alexandria, Louisiana 71301.

12.     CASSIE SAUCIER (Hereinafter referred to as Saucier) a sheriff's deputy, corporal, and/or detective with the RAPIDES PARISH SHERIFF'S OFFICE, who, at the time of the occurrence described herein, was employed as a law enforcement officer for the Rapides Parish

Sheriff's Office and acting within the course and scope of his employment for purposes of State Law, and under color of State Law, for purposes of Federal Law. Cassie is a citizen of the State of Louisiana and the United States of America. He is being sued in his individual capacity and in his official capacity as a Rapides Parish Sheriff's deputy and/or detective. He is being sued pursuant to 42 U.S.C. § 1983 and on the pendant State Law Claims and upon information and belief, he is domiciled in Rapides Parish, Louisiana, and can be served at 700 Murray Street, Alexandria, Louisiana 71301.

13.    XYZ INSURANCE COMPANY, a not yet disclosed insurance company that also issued a policy of insurance that provides coverage for the wrongful actions of the Defendants named herein that caused damages to the Plaintiffs. Plaintiffs bring direct action against this insurer pursuant to the Louisiana Direct Action Statute, Louisiana Revised Statute 22:1269. Plaintiffs reserve the right to amend this Complaint to substitute in the name any additional insurer that Plaintiffs learn has issued a policy that provides coverage for the actions of the Defendants that are the subject of this lawsuit.

## **INTRODUCTION**

14.    This is an action brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiffs' Fourth and Fourteenth Amendment rights under the United States Constitution as well as other pendant State Law claims as are discussed in further detail below.

15.    At all times relevant hereto and in all actions described herein, Defendants acted under color of state law and under the color of the laws, statutes, ordinances, regulations, policies customs and usages of the State of Louisiana, and its political subdivisions.

16.    At all times relevant hereto and in all actions described herein, all named Defendant deputies acted within the course and scope of their employment with the Rapides Parish Sheriff's office.

## FACTS

17.     On or about October 2, 2019, Louisiana State Police Officer Casey Wallace obtained an arrest warrant for a Jerry Wales, Jr. at the address of 3905 Hwy 121, Boyce, LA 71409 for crimes alleged to have been committed on July 17th, 2019. *See* October 2019 Warrant and associated Application for Search Warrant, attached as Ex. A (hereinafter referred to as the "warrant"). The warrant did not contain any language referencing the plaintiffs (Laura and Tony Lavergne) or their residence of 3885 B Hwy 121, Boyce, LA, 71409.

18.     Then, the Defendant detectives, deputies, and/ or other officers with the Rapides Parish Sherriff's Office obtained a copy of the warrant from the State Police.

19.     Thirty-two (32) days passed after the issuance of the October 2, 2019, warrant and upon information and belief, the Defendants failed to conduct any meaningful investigation or planning in preparation for the execution of the warrant; even cursory investigation and/or surveillance of the 3905 Hwy 121 (Wales) address would have revealed to the Defendants the correct location of that property.

20.     On or around November 4, 2019, instead of going to the correct 3905 Hwy 121 Jerry Wales address to execute the warrant, the Defendant detectives, deputies and/or other officers negligently, recklessly and unlawfully went to the wrong address, 3885 B Hwy 121, Boyce, LA, 71409, —the home of the Plaintiffs.

21.     At approximately 12 p.m. on November 4, 2019, the Defendant detectives, deputies and/ or other officers unlawfully entered Plaintiffs' property through the front driveway.

22.     Defendants' home was clearly marked by a mailbox as ***3885*** B. HWY. 121, Boyce, LA 71409 (not 3905 Hwy 121, Boyce, LA, the Wales address).




23.    Upon entering the Plaintiffs front yard, Defendants passed directly by a clear and unambiguous sign that was posted by Plaintiffs which read: BEWARE OF DOG. DOG IS CONTAINED BY AN INVISIBLE FENCE.



24.     When the defendants arrived on the property, the plaintiffs 4-year-old pet dog, Loki, was laying on the front porch. Loki was owned and cared for by the plaintiffs. Loki served as a support/service dog for the Lavergne's minor son, who has autism.

25.     Defendants were present on the property for a substantial amount of time with Loki in plain sight and without any incident before Laura Lavergne came to the front door.

26.     When Laura Lavergne opened her front door, she became startled when viewing six law enforcement officers in her yard, causing her to immediately and understandably retreat back into the residence to get her husband, Anthony Lavergne.

27.     Shortly thereafter, Anthony Lavergne came to the front door, and at approximately the same time, Loki left the front porch and walked in the direction of the officers.

28.     Without even considering the numerous means of non-lethal force that he had at his immediate disposal, Corporal Belgard fired multiple shots at Loki, striking Loki multiple times.

29.     Wounded, Loki ran in fear to the back of the residence while the plaintiffs chased after him.

30.     Ultimately, Loki succumbed to his injuries and the plaintiffs were force to watch as their beloved family pet laid in pain and died.

31.     Loki was not "at large" at the time of the shooting, and his owners were known, available, on the scene, willing to assert control over Loki and desirous of assuming custody over him.

32.     There was sufficient time to find an alternative solution to gain control over Loki.

33.     There were numerous non-lethal alternative solutions available to defendants to gain control over Loki.

34.     Defendants failed to develop any realistic non-lethal plan for dealing with canines during the attempt to execute the warrant.

35.     Belgard's shooting of Loki was essentially a "convenience shooting."

36.     There was no justifiable cause for Belgard to discharge his firearm or use deadly force upon Loki.

37.     After realizing that they were at the wrong address, Defendants ultimately did not perform a search of the plaintiffs' residence or conduct any investigation.

38.     Plaintiffs were not arrested or charged with any crime.

39.     Loki had never displayed aggression towards any person and was a companion animal to the plaintiffs and acted as a service/emotional support animal to the plaintiffs' minor child who has autism.

40.     Plaintiffs had to tell their minor child that his best friend and support/service dog had been killed.

41.     Plaintiffs have incurred severe, debilitating, permanent emotional and mental anguish.

42.     Defendants failed to act as reasonable law enforcement officers by, among other things, failing to (1) enlist the assistance of an expert trained in dealing with canines to assist in the attempted execution of the warrant such as an animal warden, humane society/SPCA officer or other trained professional, (2) use or even have available appropriate equipment such as a kennel or a catch pole (or even a taser) to deal with canines, and (3) by resorting to lethal force without proper justification and not using the numerous non-lethal means that were readily available to contain, control or isolate Loki.

43.    Belgard failed to comply with the Rapides Parish Sheriff's Office's written policy regarding the discharge of firearms because he discharged his firearm to kill an animal that was not dangerous and did so when other practical dispositions were available.

44.    Loki had not bitten or attacked anyone on the date of the incident in question or on any prior date.

45.    Loki was on his own property when he was shot and killed while confined by an invisible fence.

46.    The Rapides Parish Sherriff's Office and its officers, with deliberate indifference, gross negligence, and reckless disregard to the rights of the Plaintiffs, maintained, enforced, tolerated, permitted, and applied policies, practices, or customs and usages of (including but not limited to) subjecting citizens to unreasonable seizures by maintaining a custom of tolerating employee responders unreasonably using deadly force against a dog and also by failing to adequately train, supervise, and equip employee-responders to properly handle dog/animal encounters.

47.    Belgard acted unreasonably under the circumstances by resorting to lethal force.

48.    Upon information and belief, Defendant, Sheriff Hilton and the Rapides Parish Sheriff's Office had a policy, practice, or custom of tolerating employee-responders unreasonably using deadly force against loose dogs and failing to train or failing to adequately train its officers regarding use of non-lethal force and handling dog/animal encounters.

49.    Belgard's unreasonable action is wholly or partially a result of the Defendants, Sheriff Hilton and the Rapides Parish Sheriffs Office's custom of tolerating employee-responders unreasonably using deadly force against dogs and failure to train and/or equip Belgard and their other employees to properly handle dog/animal encounters without the use of lethal force.

50.    Qualified immunity does not serve to shield government Defendants from liability for civil damages because their conduct violates clearly established statutory and/or constitutional rights of which a reasonable person would have known.

51.    Each of the Defendants' actions of negligently and/or recklessly going to the wrong address lead to the Plaintiffs' damages—each of their defendants' individual errors led to this shooting.

## DAMAGES

52.    Plaintiffs incurred property damage and suffered and continue to suffer from severe, permanent, debilitating mental and emotional injury caused by the intentional actions of the defendants. Plaintiffs itemize their damages in the following particulars, to-wit:

(a)    Loss/destruction of property;

(b)    Past, present, and future permanent mental and emotional injury, damages, pain, anguish, and distress;

(c)    Violation of their constitutional and civil rights;

53.    The individual Defendant Belgard's/the other deputies' actions were reckless, showed callous indifference toward the rights of the Plaintiffs and were taken in the face of a perceived risk that the actions would violate federal law. Thus, plaintiffs are entitled to an award of punitive damages against the Defendant Belgard and other deputies in their individual capacities, as well as against Defendants Sherriff Hilton and their insurer Princeton.

## CLAIMS FOR RELIEF

### COUNT I—42 U.S.C. § 1983
**Fourth Amendment Violation—Unconstitutional Seizure (against all Defendants)**

54.    Each of the foregoing paragraphs are incorporated as if restated fully herein.

55.    Section 1983 provides a cause of action against anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates another person's Constitutional rights.

56.    To state a Section 1983 claim, a plaintiff must: (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.

57.    The Fourth Amendment to the Constitution of the United States, which applies to the states through the Fourteenth Amendment, bars unreasonable governmental searches and seizures. A "seizure" of property occurs when there is some meaningful interference with an individual's possessory interests in that property. The Fourth Amendment requires that a seizure be objectively reasonable.

58.    The killing of a family pet by law enforcement officers constitutes a seizure within the meaning the Fourth Amendment.

59.    Plaintiffs lawfully possessed and owned Loki, who was their property under Louisiana law.

60.    The foregoing wrongful acts of the Defendants, including Belgard's action in killing Loki, constituted an unconstitutional seizure that was not objectively reasonable, who was acting under color of State law, resulted in a violation of Plaintiffs' rights guaranteed by the Fourth Amendment.

61.    Loki posed no imminent threat to the Defendants or the public at large at the time of the shooting.

62.     Loki was not "at large" at the time of the shooting, and his owners were known, available, on the scene, willing to assert control over Loki and desirous of assuming custody over him.

63.     There was sufficient time to find an alternative solution to gain control over Loki.

64.     There were numerous non-lethal alternative solutions readily available to Defendants to gain control over Loki including but not limited to (1) allowing the plaintiffs to secure Loki, (2) utilizing mace, a bean bag gun, a tranquilizer dart gun, a taser, a baton, a catch pole, a qualified animal control officer, and/or a shield, or (3) simply moving back away from the property because they knew Loki could only go so far due to the electronic fence.

65.     Defendants failed to develop any realistic non-lethal plan for dealing with canines prior to or during the attempted execution of the warrant.

66.     The nature and quality of the intrusion on Plaintiffs' Fourth Amendment interests outweighs the countervailing governmental interests at stake—simply put, the Defendants actions were drastically more intrusive than necessary and Loki's destruction was entirely unnecessary to effectuate the performance of the Defendants' law enforcement duties.

67.     As a direct and proximate result of Belgard's illegal, unconstitutional and unreasonable seizure, and the other wrongful acts of the Defendants, Sherriff Hilton and the Rapides Parish Sheriff's Office, Plaintiffs suffered injury, including property loss/damage, permanent mental and emotional injury, emotional anguish, pain, suffering, fear, apprehension, depression, anxiety, loss of enjoyment of life, and the loss of their beloved dog Loki and his companionship.

68.     Belgard's actions were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Plaintiffs, thus entitling Plaintiffs to an award of punitive damages against Defendants.

69.     Upon information and belief, the Rapides Parish Sheriff's Office and its decision maker, Sheriff Hilton, with deliberate indifference, gross negligence, and reckless disregard to the rights of the plaintiffs, and all persons similarly situated, maintained, enforced, tolerated, permitted, and applied policies, practices, or customs and usages of (including but not limited to), subjecting people to unreasonable seizures of their property and failed to adequately train, supervise, and equip employees to properly handle dog/animal encounters.

70.     As a result of Defendants' unlawful actions and infringements of their protected rights, Plaintiffs have been compelled to retain counsel in this matter and are therefore entitled to a recovery of attorneys' fees, expert fees and legal costs pursuant to 42 U.S.C. § 1988.

71.     An officer is not entitled to qualified immunity for shooting a dog when the dog poses no imminent danger and its owners are known, available, and desirous of assuming custody.

### Count II—42 U.S.C. § 1983
### Fourteenth Amendment Violation—Procedural Due Process (against all Defendants)

72.     Each of the foregoing paragraphs are incorporated as if restated fully herein.

73.     The foregoing State actions deprived Plaintiffs of a protected property interest, and the state procedures available for challenging the deprivation do not satisfy the requirements of due process.

74.     Specifically, Belgard's shooting and killing of Loki deprived the Plaintiffs of their personal property without due process of law. Belgard's actions clearly deprived the Plaintiffs of

their property, and the state procedures available to the Plaintiffs were insufficient to satisfy the Due Process Clause.

## COUNT III—42 U.S.C. § 1983
### Fourth Amendment Violation—Excessive Force in Unnecessarily Destroying Plaintiffs' Lawfully Owned Property (against all Defendants)

75.    Each of the foregoing paragraphs are incorporated as if restated fully herein.

76.    The forgoing actions of the Defendants caused: (1) injury, including but not limited to substantial psychological injuries, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.

## COUNT IV—42 U.S.C. § 1983
### Fourth Amendment Violation—Monell Claim (against Sheriff William E. Hilton)

77.    Each of the foregoing paragraphs are incorporated as if restated fully herein.

78.    As described in the preceding paragraphs, the conduct of the defendant Belgard, acting under color of law, by shooting Plaintiffs' dog constituted an unreasonable and unlawful seizure in violation of the United States Constitution. This Count is limited in scope to address Defendants' unlawful seizure of Plaintiff's property.

79.    The misconduct described was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiffs' constitutional rights.

80.    The misconduct described was undertaken with malice, willfulness, and reckless indifference to the rights of others.

81.    The misconduct described was undertaken pursuant to a policy and practice of Sheriff William E. Hilton, who is a distinct political subdivision under Louisiana law, through the Rapides Parish Sheriff's Office in that:

(a)    Defendant, Sheriff Hilton, a policy-maker, is charged with duties including the promulgation and adoption of rules and regulations and general and special orders

for the governance of the Rapides Parish Sheriff's Office and including the policies, procedures and practices that apply to the situation complained of herein.

(b)   Sheriff Hilton, as chief decision maker for the Rapides Parish Sheriff's Office, applied policies, practices, or customs and usages of (including but not limited to), subjecting people to unreasonable seizures of their property by sanctioning or allowing Belgard and other deputies/detectives to use lethal force against pets unjustifiably;

(c)   Upon information and belief the misconduct of Belgard/the other deputies was investigated and found to be in compliance with the Rapides Parish Sheriff's Office's policies and procedures put in place by defendant, Sheriff Hilton.

(d)   The defendant, Sheriff Hilton, is a policy maker for the Rapides Parish Sheriff's Office for the training and supervision of its deputies regarding the use of force, which was excessive in this case;

(e)   At all times relevant to this complaint, Belgard/the other deputies were acting under the direction and control of the policy maker for the Rapids Parish Sheriff's Office, Sheriff Hilton;

(f)   As a matter of both policy and practice, the Rapides Parish Sheriff's Office and its chief decision maker, Sheriff Hilton, directly encourage, and are thereby the "moving force" behind, the very type of misconduct at issue here (and resulting constitutional violations) by failing to adequately train, supervise and control his deputies/detectives, such that his failure to do so manifests deliberate indifference;

(g)   The policy, practice and custom of Sheriff Hilton of authorizing unjustified dog shootings is a persistent widespread practice of city officials or employees, which is so common and well settled as to constitute a custom that fairly represents municipal policy.

(h)   At all times relevant to this complaint, and acting under color of law and pursuant to his policy making authority for the Rapides Parish Sheriff's Office, Sheriff Hilton, knowingly recklessly, maliciously, or with a deliberate indifference and in bad faith to the rights of citizens and callous disregard of Plaintiffs' rights, failed to instruct, train, supervise, control and discipline on a continuing basis, Deputies officers of the Rapides Parish Sheriff's Department, including Belgard/the other deputies, in their duties to refrain from the acts alleged in this complaint.

(i)   The serious harm that occurred to Plaintiffs was the obvious consequence of the official policy or custom of the defendant, Sheriff Hilton, in connection with his deliberately indifferent failure to train and supervise the defendant Belgard and other deputies/officers.

(j)   As a direct and proximate cause of the acts of Sheriff Hilton, Plaintiffs suffered damages in connection with the deprivation of their constitutional rights guaranteed

under the Fourth Amendment of the Constitution of the United States and protected by 42 U.S.C. Sec 1983.

(k)    As a result of the unjust seizure and search, Plaintiffs' have suffered property damage injury, as well severe emotional distress.

**COUNT V- State Law Claim**
**Conversion (against all Belgard and Hilton)**

82.    Each of the foregoing paragraphs are incorporated as if restated fully herein.

83.    Plaintiffs were the lawful owners of Loki.

84.    Defendants exercised dominion over the property of Plaintiffs in denial of or inconsistent with the Plaintiffs' rights.

85.    This wrongful exercise or assumption of authority over Plaintiffs' property deprived Plaintiffs of the possession of their property permanently.

86.    Belgard took possession and control of Loki by intentionally killing him in a manner that was inconsistent with the ownership/possessory rights of Plaintiffs.

87.    As a result, Defendants deprived Plaintiffs of their right to possession of Loki.

**COUNT VI- State Law Claim**
**Respondeat Superior (against Sheriff William E. Hilton)**

88.    Each of the foregoing paragraphs are incorporated as if restated fully herein.

89.    In committing the acts alleged in the preceding paragraphs, Belgard and the other defendants were employed by Sheriff Hilton and the Rapides Parish Sheriff's Office and thereby acting as agents of the Rapides Parish Sheriff's office and Sheriff Hilton.

90.    In committing the acts alleged in the preceding paragraphs, Belgard and the other defendants, at all times pertinent herein, were acting in the course and scope of their employment with the Rapides Parish Sheriff's office and Sheriff Hilton.

91.    Defendant Sherriff Hilton is liable as principal for all acts/omissions committed by his agents and employees.

92.     The actions of the individual defendants caused Plaintiffs to suffer the damages outlined herein.

### COUNT VII- State Law Claim
### Negligent Training and Supervision (against Sheriff William E. Hilton)

93.     Each of the foregoing paragraphs are incorporated as if restated fully herein.

94.      Plaintiffs allege that Sheriff Hilton and the Rapides Parish Sheriff's office failed to properly train and/or supervise its officers, including Belgard with respect to handling animal encounters, thereby resulting in the subject incident.

95.      As described in the preceding paragraphs, Plaintiffs allege that Sheriff Hilton and the Rapides Parish Sheriff's Office failed to adequately train and/or instruct officers, including Belgard and the other defendants, in the management, risks, and procedures involved in an animal encounter incident and use of deadly force.

96.     As described in the preceding paragraphs, Plaintiffs allege that Sheriff Hilton and the Rapides Parish Sheriff's Office failed to institute a policy and/or procedures concerning animal encounters and use of deadly force, and to train and/or instruct officers in such policy and/or procedures.

97.     As a result of the aforementioned, Plaintiffs have suffered emotional injuries and damages due to the loss of their pet and property.

### COUNT IX- State Law Claim
### Intentional Infliction of Emotional Distress (against all Defendants)

98.     Each of the foregoing paragraphs are incorporated as if restated fully herein.

99.     Defendants' conduct in unnecessarily destroying Plaintiffs' lawfully owned property was extreme and outrageous.

100.    These actions were intentional and reckless.

101.    The defendants desired to inflict severe emotional distress and/or knew that severe emotional distress would be certain or substantially certain to result from their conduct.

102.    Defendants' actions described herein caused Plaintiffs' severe emotional injury and distress.

## COUNT X- State Law Claim
## Trespass to Real and Personal Property (against all Defendants)

103.    Each of the preceding paragraphs is incorporated as if fully restated herein.

104.    Belgard shot and killed plaintiffs' pet dog, Loki, causing death and injury.

105.    The defendant detectives, deputies and officers without permission or probable cause, entered onto the property of plaintiffs.

106.    These actions constituted reckless and unlawful interference with the personal property of the Plaintiffs without lawful authority to do so.

107.    As a result of the trespass to real and personal property, Plaintiffs suffered damages caused by the defendants.

## MISCELLANEOUS

108.    Plaintiffs show that the incident described herein was solely caused by, either individually or in concert, by the actions/inaction and/or negligence of all of the defendants named herein.

109.    Plaintiffs desire and pray for a jury trial on all issues.

110.    All Defendants named herein are liable unto Plaintiffs for reasonable damages, together with legal interest thereon from date of judicial demand until paid, and for all reasonable costs associated with this litigation and proceedings.

111.    Plaintiffs are entitled to an award of compensatory damages against the individual Defendants in their individual capacity under 42 U.S.C. § 1983.

112.    Plaintiffs are entitled to punitive damages against the individual defendants, because their acts were reckless and showed callous indifference toward the rights of the Plaintiffs.

113.    Under 42 U.S.C. § 1988 if Plaintiffs are the prevailing party in this litigation, they will be entitled to receive an award of reasonable attorney's fees, non-taxable expenses and costs.

WHEREFORE, Plaintiffs pray that after all due proceedings had, there be a judgment in favor of Plaintiffs, Anthony Lavergne and Laura Lavergne, individually and on behalf of her minor son, and against Defendants, Sheriff William E. Hilton, Michael Belgard, Billy Fuller, William Hicks, Cody King, Steven Cloessner, Cassie Saucier, the Princeton Excess and Surplus Lines Insurance Company, and XYZ Insurance Company for such sums as are reasonable in the premises, together with interest thereon at the legal rate from the date of judicial demand until paid, including all reasonable costs and attorney's fees associated with this litigation and proceedings.

Plaintiffs FURTHER PRAY for all other general and equitable relief in the premises.

Respectfully submitted,

*/s/Alyson V.  Antoon*
ALYSON VAMVORAS ANTOON (#34131)
MICHAEL N. ANTOON (#33503)
VAMVORAS ANTOON, ATTORNEYS AT LAW
1111 Ryan Street
Lake Charles, LA 70601
Telephone: (337) 564-6919
Facsimile: (337) 433-1622
Email:         Alyson@valawyersla.com
               Michael@valawyersla.com

*-and-*

TARAK ANADA (#31598)
ALEXANDER BRECKINRIDGE (#36155)
JONES WALKER LLP
201 St. Charles Avenue
New Orleans, Louisiana 70170-5100

Telephone:     (504) 582-8322
Facsimile:     (504) 589-8322
E-Mail:        tanada@joneswaker.com
               abreckenridge@joneswalker.com


*Attorneys for Plaintiffs Laura Lavergne, her minor child, and Anthony Lavergne.*